# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAMIRAN BHATTACHARJEE, <br> 3812 Bony Bridge Place <br> Ellicott City, MD 21043 <br><br> Plaintiff, <br><br> v. <br><br> FRANKLIN SQUARE HOSPITAL CENTER, <br> INC. t/a MEDSTAR FRANKLIN SQUARE <br> MEDICAL CENTER <br> 9000 FRANKLIN SQUARE DRIVE <br> BALTIMORE COUNTY, MD 21237 <br><br> SERVE: THE CORPORATION TRUST, INC. <br> 2405 YORK ROAD, SUITE 201 <br> LUTHERVILLE TIMONIUM, MD 21093-2264 <br><br> Defendant. | CASE NO. <br><br> JURY TRIAL REQUESTED |

## COMPLAINT

**COMES NOW** the Plaintiff, Samiran Bhattacharjee, by and through his undersigned counsel, and files this Complaint against the Defendant Franklin Square Hospital Center, Inc. t/a Medstar Franklin Square Medical Center (referred to herein as "Defendant" or "FSH") alleging that he has been discriminated against in violation of 42 U.S.C. § 1981, as follows:

## JURISDICTION AND VENUE

1. This action arises under 42 U.S.C. § 1981. This Court has jurisdiction over this case pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343, 28 U.S.C. §1367, and 42 U.S.C. § 1981.

2.      Venue is proper in this Court because the Defendant FSH engaged in discriminatory acts that interfered with Plaintiff obtaining employment at a business located in the District of Columbia, and other relevant events herein took place in the District of Columbia.

## PARTIES

3.      Plaintiff Samiran Bhattacharjee is a male citizen of the United States who resides in the State of Maryland. Mr. Bhattacharjee, who is of Bangladeshi national origin and Southeast Asian race, is a member of a protected class under 42 U.S.C. § 1981.

4.      Defendant FSH is a Maryland corporation with its principal place of business at 9000 Franklin Square Drive, Baltimore County, Maryland.

## FACTUAL BASIS OF COMPLAINT

5.      Plaintiff Bhattacharjee has worked in the field of medical coding for many years. In or about February 2013, Plaintiff Bhattacharjee began employment with Defendant FHS as a medical coder. Plaintiff generally worked for Defendant FHS from home entering medical codes from physician documentation.

6.      In or around September 2, 2014, Plaintiff Bhattacharjee applied for a position as a Clinical Coding Specialist II (the "Position") with Medstar Washington Hospital Center ("WHC") at its location in the District of Columbia. The position entailed reviewing medical records, abstracting codes, abstracting diagnosis and assigning the codes based upon physician documentation.

7.      Plaintiff Bhattacharjee was competent and qualified for the position of Clinical Coding Specialist II, as he had been a physician in Bangladesh for almost 23 years, and worked at WHC as a contractor in the past with good performance feedback.

8. The predominant religion in Bangladesh is Islam, a fact that is well known throughout the world, including the United States.

9. Defendant WHC provided Plaintiff Bhattacharjee with a written offer of employment for the Position on or about October 8, 2014 (the "Offer Letter"). The Offer Letter stated that the employment at WHC was contingent upon Plaintiff Bhattacharjee providing favorable professional references, submitting to a criminal background check and satisfactory completion of a pre-employment health screening.

10. Prior to the issuance of the Offer Letter, however, the hiring official at WHC verbally advised Plaintiff that he was being offered the position at WHC. Based upon WHC's verbal hire offer, Plaintiff resigned his position at his coding position at Defendant FSH on September 16, 2014, because WHC had asked Plaintiff if he could start his new position in two weeks.

11. On or about October 20, 2014, as part of the pre-employment health screening required by WHC, Plaintiff Bhattacharjee was seen by a nurse practitioner at WHC's facility in the District of Columbia. When Plaintiff Bhattacharjee mentioned during the health screening that he was experiencing swelling in his leg, he was referred by the nurse practitioner to an Occupational Health physician, Dr. Ross Myerson.

12. On or about October 22, 2014, Plaintiff Bhattacharjee had an appointment with Dr. Myerson at WHC. During the appointment, Dr. Myerson reviewed a computer screen and raised with Plaintiff Bhattacharjee questions about his religion and national origin. Dr. Myerson also asked Plaintiff questions that appeared to indicate that Dr. Myerson believed Plaintiff was Muslim and that Plaintiff was somehow related to the terrorist group "ISIS." Additionally, during the appointment Plaintiff Bhattacharjee had with Dr. Meyerson, Dr. Myerson did not ask

Plaintiff Bhattacharjee's any questions regarding his leg condition, but instead referred Plaintiff Bhattacharjee for a psychiatric evaluation by an outside medical professional.

13. Throughout 2014, Defendant FSH and WHC were part of Medstar Health ("Medstar") corporate group. Karin Myerson, the spouse of Dr. Ross Myerson in 2014, was Assistant Vice President of Occupational Health for Medstar. Ms. Myerson was based at all times relevant here in an office located at WHC in the District of Columbia and her supervision covered both Defendant FSH and WHC in 2014.

14. When Plaintiff Bhattacharjee submitted his resignation to Defendant FSH on September 16, 2014, and met with his supervisor telling her that he was resigning, his supervisor, Ms. Sallie Tyner, was concerned about Plaintiff. Plaintiff also felt badly about directly telling the supervisor he was unhappy with his position at FSH and explained to Ms. Tyner that he was feeling stress. However, Ms. Tyner then took Plaintiff to the Occupational Health Department at FSH because he expressed concerns about his stress levels.

15. Plaintiff was seen by the Occupational Health Department at FSH on September 16, 2014, for a "Fitness for Duty Initial Visit" and the next day the nurse who saw Plaintiff reported her conversation with Plaintiff to Mr. Christopher Lockhart who was a FSH management employee, stating, among other things, Plaintiff said he "was in contact with people in India about situation [sic] regarding the US and terrorism" . . . "that he loved the US but he had friends that felt differently . . ."

16. In September 2014, Karin Myerson became aware of Plaintiff when she was informed by her subordinate at Defendant FSH, Mr. Christopher Lockhart, about Plaintiff Bhattacharjee and that Plaintiff was encouraged to see his treating provider and that they offered him support at FSH through the Employee Assistance Program due to issues raised at a Fitness

for Duty Initial Visit with the FSH Occupational Health Department.

17. Mr. Lockhart escalated the situation involving Plaintiff's Fitness for Duty Initial Visit with the FSH Occupational Health Department to the "next level," calling both the chief of security and later the safety officer of FSH about Plaintiff Bhattacharjee. Mr. Lockhart included on the medical notes for Plaintiff from Defendant FSH's Occupational Health Department Mr. Lockhart's contact with security, the safety officer and also law enforcement. The Plaintiff's medical notes also state that Plaintiff Bhattacharjee resigned his position with FSH on September 19, 2014, which is untrue.

18. In late September, 2014, after Plaintiff Bhattacharjee had left his employment with FSH, the Vice President of Finance and Chief Financial Officer ("CFO") of Defendant FSH engaged in detailed communications with Ms. Tyner regarding her former subordinate, Plaintiff Bhattacharjee. Defendant FSH's CFO appeared to want to know more about statements by Plaintiff Bhattacharjee that allegedly related to Muslims and terrorism.

19. On October 24, 2014, Plaintiff Bhattacharjee complied with the directive of Dr. Myerson and presented himself for examination by a psychiatrist, and the psychiatrist reported that Plaintiff did not have a psychological disorder or condition. Furthermore, the psychiatrist advised that he was unable to determine why Plaintiff had been referred for a psychiatric examination.

20. On or around October 23, 2014, agents of the Federal Bureau of Investigation ("FBI") visited Plaintiff Bhattacharjee's home and questioned him regarding whether or not he had affiliations with the "Islamic State" and "Al-Qaeda."

21. During the questioning of Plaintiff Bhattacharjee, he was told by the FBI agents that they were alerted of his possible affiliation with extremist groups.

22. At all times relevant herein, Plaintiff Bhattacharjee had no affiliations in any way with any extremist group, including the Islamic State and Al-Qaeda. Instead, Plaintiff Bhattacharjee as a Southeast Asian with Bangladeshi national origin was acutely aware of atrocities committed by Islamic extremists in Bangladesh and had serious concerns and fears of such extremists.

23. On or about October 29, 2014, Mr. Lockhart on behalf of Defendant FSH directly communicated with Dr. Myerson, by Dr. Myerson's personal email, and provided Dr. Myerson Plaintiff Bhattacharjee's medical records from the Occupational Health Department of Defendant FSH (the "FSH Medical Records").

24. The FSH Medical Records provided by Mr. Lockhart to Dr. Myerson referenced statements made by Plaintiff during his medical examination at FSH on September 16, 2014, and referenced Mr. Lockhart's contact with security and law enforcement as well as concerns about Plaintiff and his report of an FBI visit. The notes provided by Mr. Lockhart also included notes from October 28, 2014 at FSH about Plaintiff Bhattacharjee despite the fact that Plaintiff had resigned his employment on September 16, 2014, and had not been employed at FSH for over a month.

25. On or about November 14, 2014, Plaintiff Bhattacharjee received an email from a WHC Human Resources Department representative explaining that the hospital had found it necessary to reject his application for employment, stating that he was "unable to successfully fulfill the preemployment requirements."

26. At all times relevant herein, Plaintiff Battacharjee has a clean criminal background, positive employment references and was otherwise well qualified and competent for the position at WHC. In addition, at all times relevant herein, Plaintiff was physically fit for the

WHC position.

27.     Due to the contact with WHC and Dr. Myerson by Defendant FSH, including its disclosure of the FSH Medical Records for Plaintiff to Dr. Meyerson, Defendant FSH unlawfully interfered with Plaintiff Bhattacharjee's employment at WHC because of Plaintiff Bhattacharjee's race and national origin.

## COUNT ONE
### (Race/National Origin Discrimination in Violation of 42 U.S.C. § 1981)

28.     Plaintiff incorporates and realleges all of the allegations contained in Paragraphs 1-27 of this Complaint with the same force and vigor as if set out here in full.

29.     Defendant FSH had a contractual relationship with Plaintiff Bhattacharjee as his employer.

30.     Defendant FSH, at all times relevant herein, knew of Plaintiff Bhattacharjee's race and Southeast Asian national origin, as someone born in Bangladesh.

31.     Defendant FSH unlawfully discriminated against Plaintiff on account of his race and national origin by interfering with Plaintiff Bhattacharjee's employment at WHC because of his race and national origin in violation of 42. U.S.C. § 1981.

32.     Plaintiff Bhattacharjee 's race/national origin was a motivating factor that caused Defendant FSH to interfere with Plaintiff Bhattacharjee's employment at WHC.

33.     The acts committed by Defendant FSH as alleged herein were outrageous, wanton, intentional, reckless and in deliberate disregard of Plaintiff's established rights.

34.     As a direct and proximate result of the unlawful acts of Defendant FSH, Plaintiff has suffered, and continues to suffer, economic damages as well as other compensatory damages for, *inter alia,* mental anguish, distress, humiliation, loss of dignity, great expense,

including medical bills, damage to career and reputation, and loss of enjoyment of life.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Samiran Bhattacharjee respectfully prays that this Honorable Court:

    A.    Enter judgment on his behalf against Defendant FSH;

    B.    Award Plaintiff compensatory and other damages against Defendant in amounts to be determined by a jury;

    C.    Award Plaintiff punitive damages against Defendant FSH to be determined by a jury;

    D.    Award Plaintiff reasonable attorneys' fees, court costs, expenses, pre-judgment interest and post-judgment interest against Defendant; and

    E.    Grant Plaintiff such other and further relief as this Court may deem just and proper.

Dated: October 26, 2018                                                  Respectfully submitted,

                                                                            */s/ Neil L. Henrichsen*
                                                             Neil L. Henrichsen, DC Bar No. 420277
                                                             HENRICHSEN SIEGEL, P.L.L.C.
                                                             3233 P Street, N.W.
                                                             Washington, DC 20007
                                                             (202) 423-3649
                                                            Fax (202) 379-9792
                                                            Nhenrichsen@hslawyers.com
                                                           service@hslawyers.com

                                                            Attorneys for Plaintiffs

## JURY TRIAL DEMAND

Plaintiff hereby requests a jury trial on all issues of fact and damages.

                                                                            */s/ Neil L. Henrichsen*
                                                             Neil L. Henrichsen, DC Bar No. 420277